FILED
2007 Mar-13 PM 12:46
U.S. DISTRICT COURT
N.D. OF ALABAMA


UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| EDWARD LOWE and PAULA LOWE, ) | |
| ) | |
| Plaintiffs ) | |
| ) | |
| vs. ) | Case No.  2:05-cv-02464-HGD |
| ) | |
| THE AUTOMOBILE INSURANCE ) | |
| COMPANY OF HARTFORD, ) | |
| CONNECTICUT, ) | |
| ) | |
| Defendant ) | |

## MEMORANDUM OPINION

The above-entitled civil action is before the court on the motion for summary

judgment filed by defendant, The Automobile Insurance Company of Hartford,

Connecticut (AICH).  (Doc. #12, Motion for Summary Judgment).  This matter is

before the undersigned magistrate judge based on the consent of the parties pursuant

to 28 U.S.C. § 636(c), Rule 73, Fed.R.Civ.P., and the General Order of Reference

regarding such matters in the Northern District of Alabama.  The motion for summary

judgment has been addressed by both sides and defendant has made evidentiary

submissions, all of which have been considered by the Court.

## SUMMARY JUDGMENT STANDARD

This matter is considered by the Court pursuant to the provisions of Rule 56, Fed.R.Civ.P.  Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Rule 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 2509-10, 91 L.Ed.2d 202 (1986).  Thus, summary judgment is appropriate where the non-movant "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 332, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).  The substantive law governing the action determines whether an element is essential. *Liberty Lobby*,  477 U.S. at 248, 106 S.Ct. at 2510.  A party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, identifying those portions of the pleading, depositions, answers to interrogatories, and admissions on file, if any, which it believes demonstrate the absence of a genuine issue of material fact.  *Celotex*, 477 U.S. at 323, 106 S.Ct. at 2553; *see Brown v. Crawford*, 906 F.2d 667, 669 (11th Cir. 1990), *cert. denied*, 500 U.S. 933, 111 S.Ct. 2056, 114 L.Ed.2d 461 (1991).

This circuit clearly holds that summary judgment should be entered when the moving party has sustained its burden of showing the absence of a genuine issue of material fact when all the evidence is viewed in the light most favorable to the non-moving party, *Sweat v. Miller Brewing Co.*, 708 F.2d 655 (11th Cir. 1983); *see also, Matsushita Electrical Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).  "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Liberty Lobby*, 477 U.S. at 252, 106 S.Ct. at 2512.  The evidence of the non-movant is to be believed and all justifiable inferences are to be drawn in his or her favor. *Id*. at 255, 106 S.Ct. at 2514, *citing Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 158-59, 90 S.Ct. 1598, 1608-09, 26 L.Ed.2d 142 (1970).  It is, therefore, under this standard that the court must determine whether the plaintiffs can meet their burden of coming forward with sufficient evidence as to each material element of their claims sufficient to permit a reasonable jury to find in their favor.

## FACTUAL BACKGROUND

Plaintiffs, Edward and Paula Lowe, owned a vacant rental house located at 1361 Fulton Avenue, Tarrant, Alabama.  On October 31, 2003, this house was destroyed by fire.  Prior to the fire, plaintiffs had purchased an insurance policy on

the subject property from plaintiffs' insurance agency, Harris Insurance, Inc.  The

policy, issued by AICH, was for the period of August 9, 2003, to August 9, 2004.  In

a section titled "Section I-PERILS INSURED AGAINST," the policy provides:

> We insure for direct physical loss to the property described
> in Coverage[] A . . . caused by a peril listed below unless
> the loss is excluded in SECTION 1-EXCLUSION:
>
> * * *
>
> 9.   Vandalism or malicious mischief.
>
> This peril does not include loss:
>
> * * *
>
> b.   To property on the "residence premises, and
> any ensuing loss caused by any intentional
> and wrongful act committed in the course of
> the vandalism or malicious mischief, if the
> dwelling has been vacant for more than 30
> consecutive days immediately before the loss.
> A dwelling being constructed is not
> considered vacant.

(Defendant's Ex. A, Policy, at Bates No. 0018-0019).

        After the fire, AICH commissioned an investigation of the cause of the fire,

undertaken by Fire Investigator Robert Boteler.  Likewise, an inspection of the

electrical system at the residence was performed by John A. Worsham, P.E.  (*See*

Defendant's Ex. A, Worsham Report, at Bates No. 0112-0114). Both submitted

reports which have been submitted to the Court.  In his affidavit, submitted with these reports and photographs of the scene, Boteler states that, as a result of his investigation, he concluded that the cause of the fire was "incendiary" and not accidental.  (Defendant's Ex. E, Boteler Affid., at ¶ 3).

Although Boteler noted that there was smoke and fire damage throughout the residence, he concluded that the fire originated in a rear utility room because it was the area of greatest charring and lowest burn.  Boteler noted that this room contained three one-gallon containers of stain and a red plastic gasoline container.  The gasoline container appeared to be a 2½- to 3-gallon container.  The room smelled heavily of gasoline.  (Defendant's Ex. E, Structural Fire Investigation Report).

According to Boteler, the fire originated along the north wall of the utility room where it formed a v-shaped burn pattern in the northeast corner of the room.  The electrical panel box and a 220-volt receptacle for a clothes dryer were in this location as well.  There were no appliances located in the utility room and the water heater which was located in that room was not energized at the time of the fire.  Boteler concluded:

> The fire is incendiary based upon the elimination of accidental causes in this vacant and unoccupied rental structure.  Accidental causes were eliminated through the fire scene inspection and investigation of the fire.  The building's electrical system was examined by an electrical

> engineer and eliminated as a fire cause. The security of the
> vacant home at the time of the fire could not be established
> since the fire destroyed the rear windows and door. The
> melted remains of a red colored fuel container of gasoline
> in the utility room were accounted for by the former tenant.
> Minus the gasoline, the cause remains incendiary.

(Defendant's Ex. E, Structural Fire Investigation Report, at Bates No. 0051).

John Worsham's report also concludes that the main fire damage occurred in the utility room at the back of the residence. He noted that a breaker sub-panel and a 220-volt receptacle were located in the area of greatest fire damage. Additionally, the remains of an overhead lighting fixture found in the fire debris and 120-volt duplex receptacles of the utility room were also examined. An examination of the residence main breaker panel was also conducted. (Defendant's Ex. E, Worsham Report).

The residence main panel was located on the exterior wall of the residence utility room. An examination of the breakers and wiring in the main panel found no indications of arc or resistance heat damage. Insulation on all wiring was intact and exhibited no indications of heat damage from overload. Two breakers in the main panel were in the "tripped" position. These were a 50-ampere two-pole breaker that supplied the sub-panel in the utility room and a 30-ampere breaker that supplied the

220-volt receptacle also located in the utility room.  All others were in the "on" position.

The sub-panel was also inspected.  The sub-panel aluminum bus had melted, and most of the breakers in the panel had fallen out of the sub-panel and broken apart. Examination of the breaker remains found in the fire debris below the sub-panel found no indications of arc damage or of resistance heating damage at the breaker wiring or bus contacts.  Branch circuit wiring routed from the sub-panel exhibited no arc damage, and the wiring ends that had been connected to the breakers exhibited no indications of resistance heat damage.

An examination of the exterior of the sub-panel reflected that it was supplied by a three-conductor cable composed of copper No. 6 American Wire Gauge (AWG) stranded conductors connected to the tripped 50-ampere two-pole breaker in the main panel.  Insulation had burned away from the entire length of the cable in the utility room, and arc damage was observed to one conductor of the three-conductor cable. This arc damage was localized to a single area.  The arc damage was located where the connector entered the sub-panel.  The arc damage was limited.  No other arc damage was noted on the sub-panel cabinet.

Worsham concluded that the localized and limited arc damage to the single conductor of the cable supplying the sub-panel and the sub-panel cabinet, and the

tripped 50-ampere breaker to which this cable had been connected, indicated an arcing fault event as the result of a catastrophic loss of insulation on the conductor such as would occur if the insulation were to burn away.  Arc damage to the sub-panel and the conductor supplying the panel was a result of the fire, not the cause.

He further noted that the combustible components of the 220-volt receptacle had burned away, but metal components remained intact.  The 220-volt receptacle contacts exhibited no indication of arc or resistance heating damage.  The receptacle was supplied by a three-conductor cable of No. 10 AWG solid copper conductors. Insulation had burned away from that portion of the cable located in the utility room. Damage indicating arcing between two of the conductors was noted approximately five feet above the receptacle.  The arc damage on the conductors took place near the ceiling level of the utility room and well away from the fire low point of burn, indicating that the arcing between the conductors was the result of fire damaging the cable insulation thus allowing the conductors to come in contact with each other.

Likewise, examination of the overhead lighting fixture and the receptacles and wiring associated with these devices showed no indication of arc, overload, or resistance heating damage.

In conclusion, Worsham stated:

> Based on the examination of the electrical devices and wiring in the fire damaged areas of the Latham [sic] residence, the fire was caused by the malfunction of an electrical device or wiring. Arc damage observed to wiring supplying the sub-panel and the 220-volt receptacle were the result of fire damage to the wiring insulation leading to the arcing of the wiring.

(Defendant's Ex. E, Worsham Report, at Bates No. 0114).

The house contained no appliances connected to any energy source at the time of the fire. The natural gas service and the meter had been disconnected prior to the fire. It is undisputed that the rental house was vacant for more than 30 days prior to October 31, 2003. The last tenant to occupy the premises was Charles McNespy. Mr. McNespy vacated the property in April 2003, approximately six months prior to the fire. No one occupied the house at the time of the fire. The property had been up for sale for approximately four months, but there were no showings and no offers to purchase the property. Edward Lowe possessed the only key to this property at the time of the fire.

The front and side doors to the property were locked at the time of the fire. However, the security of the house could not be determined because of the damage done to the rear door and rear windows of the house by the fire before the fire department arrived.

By letter dated May 10, 2004, AICH declined to pay insurance proceeds to plaintiffs, based in part on the vandalism or malicious mischief exclusion. Thereafter, plaintiffs filed this action, asserting claims for breach of contract and bad faith.

**DISCUSSION**

**Bad Faith Failure to Pay Claim**

A plaintiff alleging bad faith failure to pay an insurance claim must show (a) an insurance contract between the parties and a breach thereof by the defendant; (b) an intentional refusal to pay the insured's claim; (c) the absence of any reasonably legitimate or arguable reason for that refusal (the absence of a debatable reason); and (d) the insurer's actual knowledge of the absence of any legitimate or arguable reason. *National Sec. Fire & Cas. Co. v. Bowen*, 417 So.2d 179, 183 (Ala. 1982). Plaintiffs cannot satisfy each element of this cause of action. In this case, defendant conducted a thorough investigation into the cause of the fire before denying plaintiffs' insurance claim. Defendant concluded based on the investigation that the probable cause of the fire was vandalism or malicious mischief (arson). Therefore, under the policy, it had a reasonably legitimate or arguable reason for refusing to pay insurance benefits. As a result, defendant is due to be granted summary judgment on plaintiffs' claim of bad faith.

**Breach of Contract Claim**

Plaintiffs do not dispute the terms of the policy; that is, that there is no coverage under the policy for an intentionally set fire if the premises have been unoccupied for more than 30 days. They also do not dispute that the property was unoccupied by a renter for over 30 days prior to the fire. What they do dispute is AICH's claim that the fire was not the result of an accident but was, instead, intentionally set.

According to plaintiffs, the only evidence regarding the origin of the fire is the statement of Tarrant Fire Investigator Richard T. Murphy wherein he states that otherwise unidentified firefighters on the scene stated that there was a smell of gasoline at the back of the house. According to counsel for plaintiffs, AICH's own investigator reported that the smell of gasoline was attributable to a plastic container kept by the back door by the previous tenant to use in cutting the grass. However, a review of the statement of the investigator reveals that this is not exactly correct. The exact statement of the investigator is as follows:

> NOTE: This investigator discovered the remains of a melted plastic container of gasoline by the stain under the panel boxes. Mr. Lowe check[ed] with Mr. McNespy, the former tenant, and found that he had left the container of gasoline in that location the last time he cut the grass. Mr. Lowe was not aware of its presence the day of our fire scene examination.

(Defendant's Ex. E, Worsham Report, at Bates No. 0049).

Thus, the statement cited reflects that there was a container of gasoline that had been left in the utility room.  However, the statement does not reflect that the investigator concluded that this was the source of the gasoline odor in the room.

Plaintiffs also note that Tarrant Fire Investigator Murphy's report on this fire states that the cause of the fire is "under investigation" and makes no finding as to vandalism or malicious mischief.  The full statement of investigator Murphy is as follows:

> Upon arrival house well involved in rear.  3 in supply line laid from hydrant.  Attacked with 3 1¾ handlines.  Fire extinguished inside.  Fire spread to attic.  Extinguished with handlines and deluge gun.  Structure was vacant.  Unknown if locked.  Cause of fire under investigation.

(Defendant's Ex. G, Murphy Report, at AICH 0105).

Based on this, plaintiffs assert there is no proof that the fire was the result of vandalism and malicious mischief.  Counsel for plaintiffs asserts that the investigation into the cause of the fire was inconclusive and that no criminal charges have been brought against plaintiffs.  Counsel states that the cause of the fire is undetermined and, as such, the policy exclusion does not apply.  According to plaintiffs, some proof of the origin of the blaze must be shown in order to meet the "vandalism and mischief" exclusion of the policy.  They note that there is no evidence

of the use of an accelerant, a place or places of origin for the fire or witnesses regarding the source of the fire. Therefore, plaintiffs state, without evidence of the origin of the fire, the motion for summary judgment is due to be denied.

However, plaintiffs ignore the results of the investigations by defendant's fire investigator Boteler and engineer Worsham. After a thorough investigation, Worsham concluded that the cause of the fire was not electrical in nature. Likewise, considering a number of other factors, including the conclusions of Worsham, Boteler was able to conclude, by a process of elimination, that the fire was incendiary in nature. There is authority in both civil and criminal cases supporting the proposition that expert evidence as to the cause of a fire is admissible even though the conclusion was arrived at circumstantially, through a process of elimination of all other possible causes, as such evidence can be highly probative.

In *Breidor v. Sears, Roebuck and Co.*, 722 F.2d 1134 (3d Cir. 1983), the Third Circuit Court of Appeals reversed the district court for excluding the proffered testimony of an expert witness on the cause of a fire to the effect that it started inside a refrigerator, allegedly due to an unknown electrical malfunction in the thermostat, despite a contention that because the expert could not find a specific defect and merely eliminated all other causes, his opinion as to the probable cause of the fire was mere speculation and guesswork and was without foundation. Relying on *Gichner*

*v. Antonio Troiano Tile & Marble Co.*, 410 F.2d 238 (D.C.Cir. 1969), the court reasoned that when a fire investigator identifies the cause of the fire in terms of probabilities by eliminating all reasonable potential causes of the fire but one, such testimony is highly probative.

In *Gichner, supra*, the court held that a fire investigator's opinion that a fire in a warehouse was caused by careless smoking was admissible even though the conclusion was arrived at circumstantially, through a process of elimination. The court reasoned that such an approach was sanctioned by precedent. The court noted that direct proof of smoking would be hard to find in this type of situation, since it is of course likely that the cigarette would be consumed in the ensuing conflagration. Continuing, the court pointed out that the burden of proof might be impossible if the parties had to show it directly. The court determined that when a fire investigator identifies the cause of a fire in terms of probabilities and not mere possibilities, by eliminating all potential causes of the fire but one, the testimony is not only relevant, but in some circumstances might be a basis for a decision.

The court held in *Farmers Ins. Co. v. Smith*, 549 P.2d 1026 (Kan. 1976), that there was a sufficient factual basis for an expert witness' conclusion that the source of a fire in a mobile home was a loose electrical connection at or near a circuit breaker box, and thus the trial court was in error in excluding from evidence the

expert's opinion as to the source of the fire.  The court acknowledged that the opinion of an expert must be based on adequate facts and must not be based on evidence which is too uncertain or speculative.  The court pointed out that the investigation by the expert was thorough and that the undisputed testimony from several witnesses established that the cause of the fire was probably electrical in origin and that the fire started in the area of the circuit breaker box.  The court added that by the expert's elimination of other possible causes for the fire it would appear that his conclusion was reasonable that the fire was the result of some defect in the mobile home's electrical system.

In *State v. Elwell*, 380 A.2d 1016 (Me. 1977), the court held that the admission of opinion testimony of a fire expert that the cause of a fire was arson was not an abuse of discretion despite a defense claim that the opinion of causation could be given by any untrained layperson as a matter of common knowledge, and where an inspector testified that there was an absence of any evidence that the fire was of natural or accidental causes, which led him to believe that arson was the cause.

In *State v. Spearin*, 477 A.2d 1147 (Me. 1984), the court held that expert evidence as to arson was admissible where the expert witness eliminated all other causes but arson.  The court reasoned that the expert visited the scene of the fire three

days after it occurred, was able to identify the likely point of its origin, and was able to eliminate other natural and accidental causes in the area of the fire's origin.

In *Commonwealth v. Harris*, 295 N.E.2d 687 (Ma.Ct.App.), *judgment aff'd on other grounds*, 364 Mass. 236, 303 N.E.2d 115 (1973), the court held that the opinion of a fire department investigator that there were two independent fires in a synagogue and that they were incendiary in nature was not inadmissible although it was alleged that such testimony was mere conjecture because the expert's opinion was largely based on the elimination of other, non-suspect causes rather than positive evidence of an incendiary fire.  Relying on *Brownhill v. Kivlin*, 57 N.E.2d 539 (Ma. 1944), the court reasoned that as an abstract proposition it would seem possible for an arsonist to employ a causative agent that would be wholly consumed in the fire he set, and nevertheless for an experienced investigator reasonably to infer an incendiary origin from the systematic elimination of other possibilities.

In *State v. Eason*, 328 N.C. 409, 402 S.E.2d 809 (1991), the court rejected a claim in an arson and murder prosecution that the trial court erred by denying a motion to strike opinion testimony by the state's expert witness that the burning of the victim's home was of incendiary origin on the ground that the opinion testimony, reached largely by process of elimination, was entirely speculative and without basis. The expert testified to a thorough examination of the scene and stated that he could

not find any apparent evidence of an accidental origin such as a short in the electrical wiring. The expert testified that based on those facts, he formed the opinion that the fire had an incendiary origin that would mean it was an intentionally set fire, as opposed to one that was purely accidental or started without intent to burn the mobile home. On cross-examination, the defendant inquired further into the basis of the expert's opinion that the fire had an incendiary origin. The expert testified that his opinion was based primarily on the elimination of any accidental source, explaining that he eliminated the suggestion of a cigarette ignition by what he had been told about the time frame of the fire. Because of the time frame associated with the fire, the expert believed that an open flame source was necessary to cause it to start and burn as quickly as it did. The expert admitted that he did not know the exact cause of the fire, but stated that based on his findings, an open flame source was necessary to create a fire with the characteristics of the one that burned the victim's mobile home. The court concluded that given such testimony, there was a sufficient basis on which the expert could base his opinion.

Thus, the Court concludes that the evidence presented by defendant's experts was sufficient to establish that the cause of the fire was incendiary, *i.e.*, caused by vandalism or malicious mischief. Plaintiffs have presented no evidence to the contrary, in the form of expert opinion or otherwise, to contradict or even create a

genuine issue of material fact as to the correctness of defendant's conclusion as to the cause of the fire. While the initial statement from the Tarrant Fire Department, three days after the fire, was that the fire was still under investigation, this is not a conclusion that the cause of the fire was unknown or could not be determined. It was simply a statement of fact regarding the situation three days after the fire. No further investigation was undertaken by the Tarrant Fire Department. However, Boteler proceeded to do just that and, after the investigation outlined above, concluded, by process of elimination, that the fire could not have been accidental and was, therefore, incendiary. AICH's evidence that the fire was caused by arson is unrefuted by any evidence offered by plaintiffs.[1] Therefore, the undisputed evidence reflects that plaintiffs' property was unoccupied for considerably longer than 30 days before the fire and that it was destroyed as a result of vandalism or malicious mischief.[2]

Consequently, there are no disputed material issues of fact that need to be decided, and the Court concludes that defendant's motion for summary judgment is due to be granted. A separate order in conformity with this Memorandum Opinion will be entered contemporaneously herewith.

---

[1] Defendant asserts that it is not accusing plaintiffs of being responsible for the fire, just that the cause was incendiary.

[2] "Vandalism" includes arson. *See Estes v. St. Paul Fire & Marine Ins. Co.*, 45 F.Supp.2d 1227, 1229 (D.Kan. 1999).

DONE this 13th day of March, 2007.

HARWELL G. DAVIS, III
UNITED STATES MAGISTRATE JUDGE